# *ATTACHMENT A*

TRANSCRIPT OF OPINION

MOTIONS BEFORE THE HONORABLE WHEELER A. ROSENBALM

May 25, 2012

IN THE CIRCUIT COURT FOR KNOX COUNTY, TENNESSEE

```
--------------------------------------  )
FIRST COMMUNITY BANK f/k/a              )
FIRST COMMUNITY BANK, N.A.,             )
                                        )
            Plaintiffs,                 )
                                        )  No. 3-475-11
vs.                                     )
                                        )
FIRST TENNESSEE BANK, N.A. d/b/a        )
FTN FINANCIAL CAPITAL MARKETS, et al.,  )
                                        )
            Defendants.                 )
--------------------------------------  )
```

APPEARANCES:

        FOR THE PLAINTIFF FIRST COMMUNITY BANK
        F/K/A FIRST COMMUNITY BANK, N.A.:

        DANIEL P. LYNCH, Esq.
        WILLIAM J. WYRICK, Esq.
        Lynch Weis, LLC
        Cranberry Professional Park
        501 Smith Drive, Suite 3
        Cranberry Township, Pennsylvania  16066

        LAWRENCE F. GIORDANO, Esq.
        SHANNON VAN TOL, Esq.
        Lewis, King, Krieg & Waldrop, P.C.
        620 Market Street, Fifth Floor
        Post Office Box 2425
        Knoxville, Tennessee  37901-2425

```
 1      FOR THE DEFENDANTS FIRST TENNESSEE BANK, N.A. DBA
        FTN FINANCIAL CAPITAL MARKETS AND FTN FINANCIAL
 2      SECURITIES CORP.:

 3      MARK D. GRIFFIN, Esq.
        Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
 4      First Tennessee Building
        165 Madison Avenue, Suite 2000
 5      Memphis, Tennessee  38103

 6
        FOR THE DEFENDANT KEEFE, BRUYETTE & WOODS, INC.:
 7
        ERIC HEICHEL, Esq.
 8      Eiseman Levine Lehrhaupt & Kakoyiannis
        805 Third Avenue
 9      New York, New York  10022

10      JAMES A. HOLIFIELD, Esq.
        Holifield & Associates, PLLC
11      8351 East Walker Springs Lane, Suite 303
        Knoxville, Tennessee  37923
12

13      FOR THE DEFENDANTS PREFERRED TERM SECURITIES X,
        LTD., PREFERRED TERM SECURITIES XII, LTD.,
14      PREFERRED TERM SECURITIES XIV, LTD., PREFERRED
        TERM SECURITIES XVI, LTD., PREFERRED TERM
15      SECURITIES XXII, LTD., PREFERRED TERM SECURITIES
        XXIII, LTD., PREFERRED TERM SECURITIES XXVI, LTD.,
16      PREFERRED TERM SECURITIES X, INC., PREFERRED TERM
        SECURITIES XII, INC., PREFERRED TERM SECURITIES
17      XIV, INC., PREFERRED TERM SECURITIES XVI, INC.,
        PREFERRED TERM SECURITIES XXII, INC., PREFERRED
18      TERM SECURITIES XXIII, INC., PREFERRED TERM
        SECURITIES XXVI, INC., TRAPEZA CDO XIII, LTD.,
19      TRAPEZA CDO XIII, INC., SOLOSO CDO 2007-1 LTD.,
        AND SOLOSO CDO 2007-1 CORP.:
20
        RIPLEY HASTINGS, Esq.
21      Nixon Peabody LLP
        100 Summer Street
22      Boston, Massachusetts  02110

23      ANDREW L. COLOCOTRONIS, Esq.
        Wagner, Myers & Sanger, P.C.
24      1801 First Tennessee Plaza
        Post Office Box 1308
25      Knoxville, Tennessee  37901-1308
```

```
 1        FOR THE DEFENDANTS J.P. MORGAN SECURITIES LLC
          F/K/A J.P. MORGAN SECURITIES INC., INDIVIDUALLY
 2        AND AS SUCCESSOR IN INTEREST TO BEAR, STEARNS &
          CO. INC., AND BEAR, STEARNS & CO. INC:
 3
          KEVIN J. ORSINI, Esq.
 4        TAMARA A. RUBB, Esq.
          Cravath, Swaine & Moore LLP
 5        825 Eighth Avenue
          New York, New York  10019-7475
 6
          JOHN A. LUCAS, Esq.
 7        Merchant & Gould
          110 McGhee Tyson Boulevard
 8        Suite 203
          Alcoa, Tennessee  37701
 9

10        FOR THE DEFENDANT MORGAN KEEGAN & CO., INC.:

11        THOMAS K. POTTER, III, Esq.
          Burr & Forman LLP
12        700 Two American Center
          3102 West End Avenue
13        Nashville, Tennessee  37203

14
          FOR THE DEFENDANT TRAPEZA CAPITAL
15        MANAGEMENT, LLC:

16        MARK P. GIMBEL, Esq.
          Covington & Burling LLP
17        The New York Times Building
          620 Eighth Avenue
18        New York, New York  10018-1405

19        RUSSELL E. STAIR, Esq.
          Bass, Berry & Sims PLC
20        1700 Riverview Tower
          Knoxville, Tennessee  37902
21

22        FOR THE DEFENDANT SUNTRUST ROBINSON HUMPHREY, INC.
          F/K/A SUNTRUST CAPITAL MARKETS, INC.:
23
          S. LAWRENCE POLK, Esq.
24        Sutherland Asbill & Brennan LLP
          999 Peachtree Street, NE
25        Atlanta, Georgia  30309-3996
```

Page 4

```
 1        JOHN E. WINTERS, Esq.
          Kramer Rayson LLP
 2        800 South Gay Street, Suite 2500
          Post Office Box 629
 3        Knoxville, Tennessee  37901-0629

 4

          FOR THE DEFENDANTS MERRILL LYNCH, PIERCE, FENNER &
 5        SMITH, INCORPORATED AND BANK OF AMERICA
          CORPORATION AS SUCCESSOR IN INTEREST TO MERRILL
 6        LYNCH, PIERCE, FENNER & SMITH, INCORPORATED:

 7        ROGER A. COOPER, Esq.
          JARED GERBER, Esq.
 8        Cleary Gottlieb Steen & Hamilton LLP
          One Liberty Plaza
 9        New York, New York  10006

10

          FOR THE DEFENDANT MOODY'S INVESTORS
11        SERVICE, INC.:

12        JAMES J. COSTER, Esq.
          JAMES DOTY, Esq.
13        Satterlee Stephens Burke & Burke LLP
          230 Park Avenue
14        New York, New York  10169

15        DWIGHT E. TARWATER, Esq.
          Paine, Tarwater & Bickers, LLP
16        Riverview Tower
          900 South Gay Street, Suite 2200
17        Knoxville, Tennessee  37902-1821

18

          FOR THE DEFENDANT FITCH, INC. D/B/A FITCH
19        RATINGS:

20        ROBERTA A. KAPLAN, Esq.
          JACOB H. HUPART, Esq.
21        Paul, Weiss, Rifkind, Wharton & Garrison LLP
          1285 Avenue of the Americas
22        New York, New York  10019

23        BERNARD E. BERNSTEIN, Esq.
          Bernstein, Stair & McAdams LLP
24        The Trust Company Building
          4823 Old Kingston Pike, Suite 300
25        Knoxville, Tennessee  37919
```

```
 1        FOR THE DEFENDANT THE MCGRAW-HILL COMPANIES, INC.
          D/B/A STANDARD & POOR'S RATINGS SERVICES:
 2
          FLOYD ABRAMS, Esq.
 3        TAMMY L. ROY, Esq.
          Cahill Gordon & Reindel LLP
 4        80 Pine Street
          New York, New York  10005
 5
          W. KYLE CARPENTER, Esq.
 6        Woolf, McClane, Bright, Allen & Carpenter, PLLC
          900 Riverview Tower
 7        900 South Gay Street
          Post Office Box 900
 8        Knoxville, Tennessee  37901-0900

 9
          ALSO APPEARING:
10
          ALAN G. STAHL, Esq.
11        604 Washington Avenue
          Suite 2
12        Bridgeville, Pennsylvania  15017

13

14

15

16

17

18

19

20

21

22

23

24

25   REPORTED BY:  JANA NEIGHBORS, RPR, CCR, LCR
```

1    (The following proceedings were had in open

2    court on May 25, 2012, before the Honorable

3    Wheeler A. Rosenbalm.)

4        THE COURT:  Well, this case is not without

5    difficulty, as is witnessed by the 260-page

6    complaint that was filed in this lawsuit, and

7    the task that you have given to me is extremely

8    difficult, and I again want to thank you for

9    the very, very able briefs that were filed by

10   everyone to help me reach the right kind of

11   result.

12       I agree that it is difficult to dispose of

13   a case at this stage, the pleading stage, yet

14   there are parameters, standards, that we

15   lawyers and judges are supposed to follow, and

16   they're pretty well spelled out in our case law

17   and in the Rules of Civil Procedure.  And so

18   I'm going to try to decide the issues that we

19   have here today as best I can based upon my

20   understanding of those standards, and it

21   worries me a little bit to attempt to do that

22   because I agree with counsel that, in some

23   respects, we are a very liberal pleading state.

24   In any event, we have these issues that have

25   been raised by the various motions in this

1    case, and I'm going to try to decide those

2    motions without any considerable elaboration

3    because I don't think that's necessary, I don't

4    think you want that.

5        First we have to deal with the question in

6    this case of whether the plaintiff is entitled

7    to take discovery, further discovery, on the

8    issue of personal jurisdiction over those

9    defendants who have put into issue or question

10   the Court's jurisdiction over their person.

11       And, briefly, it is my understanding of the

12   law of this state that when a defendant raises

13   a personal jurisdiction issue by an adequately

14   supported motion to dismiss, that the burden

15   shifts to the plaintiff or is upon the

16   plaintiff to establish a prima facie case of

17   jurisdiction by appropriate averments or, if

18   necessary, affidavits, and that after having

19   furnished the Court with affidavits or other

20   materials in opposition to the motion to

21   dismiss, it may be necessary in certain

22   instances to permit discovery on the issue of

23   jurisdiction.

24       However, great caution must be urged, must

25   be adhered to or followed, in permitting

1          discovery at this stage of litigation.  If we

2          permit extensive discovery, even on

3          jurisdictional issues, that is not warranted by

4          the state of the record at that point, then we

5          deprive the defendant, who has a liberty

6          interest in not being drawn into court

7          everywhere, we deprive the defendant of the

8          very protection the due process clause was

9          designed to afford him.

10             And in this case, it appears to this Court

11         that the defendants that have filed Rule 12

12         motions questioning or challenging the

13         jurisdiction of the court have supported those

14         motions with appropriate affidavits, and the

15         plaintiff has furnished some affidavits in

16         response to the defendants' motions, but the

17         Court is constrained to conclude that the

18         plaintiff has not established such a prima

19         facie case that it should be permitted at this

20         point to inquire by discovery further about the

21         personal jurisdiction defense, and so this

22         Court most respectfully denies that implicit

23         request which is in plaintiff's motion for a

24         status conference and sustains those motions

25         filed by defendants for either protective

1       orders or to quash on that issue.

2            And having done that, the Court is called

3       upon to decide the question of personal

4       jurisdiction over the defendants who have

5       raised that issue.  Has the plaintiff

6       established that it is entitled to proceed

7       against those defendants in this court at this

8       time?  The Court hears the plaintiff arguing

9       that there is information here both from which

10      the Court could conclude that there is general

11      jurisdiction over these defendants, and that

12      there's case-specific jurisdiction, but the

13      Court is constrained to conclude that the

14      information in this record is not sufficient to

15      permit that conclusion.

16           The plaintiff further proceeds by an

17      amended complaint which seeks to establish a

18      conspiracy among the defendants such as would

19      enable plaintiff to reach out beyond the

20      borders of this state and draw in people,

21      because of the conduct of others, with whom

22      they had made some kind of agreement to either

23      engage in unlawful conduct or engage in lawful

24      conduct by the employment of unlawful means,

25      but that allegation or those allegations of

1      conspiracy jurisdiction are generally vague and

2      really are little more than the kind of group

3      pleading that the plaintiff employs in the

4      remainder of this action against all of the

5      parties.

6          The Court is not constrained to conclude

7      and holds that the plaintiff has not

8      established an entitlement to proceed against

9      the rating agencies and the issuers, who have

10     each raised well-supported motions to dismiss

11     for a lack of personal jurisdiction, and the

12     motions of each and all of those particular

13     defendants is respectfully sustained.

14         Having sustained the objection, the motions

15     of the defendants, based upon a lack of

16     personal jurisdiction raises an interesting

17     question about whether the Court should proceed

18     to deal with the issues that those same

19     defendants have raised by motions to dismiss

20     for failure to state a claim upon which relief

21     can be granted.  One might say that if the

22     Court has excluded those parties from the

23     lawsuit on jurisdictional grounds so that the

24     plaintiff cannot obtain any other relief in the

25     case from those defendants, the Court is not in

Page 11

1          a position to grant any further relief to those

2          defendants, but I know and you know that this

3          case is going to the Court of Appeals, maybe

4          even beyond, and so I feel that under the

5          circumstances, the Court is warranted in

6          considering the motions to dismiss based upon

7          the failure to state a claim for relief that

8          have been asserted by those defendants as well

9          as all of the other defendants in the case, and

10         so I'll attempt to rule on those issues also.

11             As a part of the respective defendants'

12         motions to dismiss for failure to state a

13         claim, the defendants assert that the claims

14         bought by plaintiff in this case are barred by

15         the statute of limitations.  The defendants

16         refer to the three-year statute of limitations

17         in 28-3-105 that apply to various tort claims

18         and, in the opinion of this Court, apply to all

19         of the claims involved in this case.

20             Further, defendants rely upon the two-year

21         statute of limitations and the five-year

22         statute of repose contained in the Tennessee

23         Securities Act, insofar as that act is relied

24         upon in this case.  And the Court recalls that

25         there were a couple of transactions in which

1          plaintiff engaged in the year 2003 and are

2          clearly beyond the five-year statute of repose

3          in the Tennessee Securities Act legislation,

4          and so to the extent that those claims are

5          still in the lawsuit, the Court concludes and

6          so most respectfully holds that those

7          transactions are barred by the five-year

8          statute of repose contained in Tennessee Code

9          Annotated, what, 48-1-122 -- whatever -- the

10         Tennessee Securities Act.

11             Further, the two-year statute of

12         limitations in the Securities Act and the

13         three-year statute of limitations that applies

14         to the common-law actions in this case, as

15         opposed to the statutory action, the three-year

16         statute of limitations and the two-year statute

17         of limitations each apply -- or begin to run,

18         one probably should properly say -- only when

19         the plaintiff knew or should have known that it

20         had sustained some kind of injury and had some

21         kind of entitlement to relief, although it may

22         not have appreciated the legal basis of that

23         relief.  And, of course, ordinarily this

24         question of when the plaintiff knew or should

25         have known of something that would put into

Page 13

1          motion the statute of limitations or start it

2          running is ordinarily a question of fact.  I

3          agree with the plaintiffs about that quite

4          wholeheartedly.  But it's clear by the

5          appellate opinions in this state that if the

6          complaint alleges circumstances that shows that

7          the statute of limitations has run, that it's

8          proper to deal with that by a motion to

9          dismiss, and it's not necessary to have the

10         jury or a fact-finder pass on that issue.

11             In this case, the gist of plaintiff's

12         lawsuit -- and I oversimplify it, but the gist

13         of plaintiff's lawsuit is that the rating

14         agencies used inappropriate or improper ratings

15         for the securities involved in this case, and

16         that those ratings were, among other things,

17         tainted by the fact that the issuers have paid

18         the raters a fee, and that there was a conflict

19         of interest growing out of that arrangement

20         because the issuers were alleged to have talked

21         to the rating agencies and made it clear what

22         ratings were needed and indicated that the

23         rating agencies' business from a particular

24         issuer might well be affected by what kind of

25         rating the issuer made in a particular case.

Page 14

1          Anyway, the plaintiff has alleged at length

2          that the ratings were tainted by various items

3          of conflict of interest, and so it appears in

4          this case that the very theory upon which the

5          plaintiff proceeds is grounded upon various

6          things that were discovered and made public

7          knowledge long before the plaintiff filed a

8          lawsuit in this case.

9             The Court remembers from the pleadings that

10         the Congress dealt with ratings by rating

11         agencies and passed comprehensive legislation

12         dealing with some of the problems that

13         plaintiff mentions here in 2006; in 2007 there

14         was considerable public notoriety about the

15         role of rating agencies and whether or not they

16         were laboring under conflicts of interest and

17         engaged in other wrongdoing; the rating

18         agencies in this case, according to the

19         plaintiff's complaint, began to re-rate or

20         issue downgrades in the ratings that they had

21         employed, on the very securities that the

22         plaintiff employed -- I mean purchased -- and

23         that all took place in 2007; and that in 2007

24         the Wall Street Journal wrote at length about

25         the very problems that are the basis of

1      plaintiff's lawsuit; and, finally, the United

2      States Congress released a report in July of

3      2008 that called attention to all of these

4      problems.  And I just really cannot see how

5      anybody that was in charge of investments at a

6      banking institution could have not been aware

7      of all of these problems by at least July of

8      2008.

9          It is the opinion of the Court that when

10     this suit was filed on September 15, 2011, more

11     than three years after the Senate released the

12     report to which we've alluded, that that came

13     more than two years and indeed more than three

14     years after the plaintiff knew or should have

15     known these problems, and hence the Court is

16     constrained to conclude that the pleadings in

17     this case reveals that the common-law actions

18     and the statutory action are barred by the

19     two-year and three-year statute of limitations

20     that apply in this case.

21         And finally we've come to the most

22     difficult problem in the case, and that is

23     whether this complaint that the plaintiff has

24     filed is sufficient to pass muster as a

25     complaint seeking damages that basically are

1        based upon averments of fraud.  And we all

2        talked at length here about the fact that the

3        Tennessee Rules of Civil Procedure require

4        allegations of fraud to be stated with

5        particularity.

6            And I mean no disrespect to the plaintiff,

7        and they've done a marvelous job, and I've

8        enjoyed the debate that you've had with me, but

9        I'm sort of like Mr. Griffin when I read this

10       complaint the first time; I said, boy, that

11       thing has got a lot in it, but does it say

12       anything?  Does it really say that there is a

13       cause of action for fraud, constructive fraud,

14       negligent misrepresentation, violation of the

15       Tennessee Securities Act, unjust enrichment?

16           And plaintiff has done a marvelous job of

17       trying to draw everybody who might have had

18       some connection with these transactions into

19       this case, and perhaps that explains in part

20       the manner in which the matter has been

21       presented in the complaint.  And I'm not

22       criticizing anybody for that; please don't

23       misunderstand.  I said once before and I say

24       again, it's cleverly done, but does it pass

25       muster under the standards of pleading that I

1       believe we are constrained to follow?

2           And I look at the complaint and find that

3       it doesn't appear to me that it attributes any

4       misrepresentation, any statement of fact, any

5       false statement of fact, to any particular

6       individual; it attributes it to all of them.

7       It is truthfully -- most of the statements

8       contained in the complaint, in my opinion, are

9       opinion and forward looking in nature and

10      involve conjecture about the creditworthiness

11      of these securities that are involved in this

12      case.

13          The complaint incorporates the offering

14      circulars, or prospectuses, that were used by

15      the parties to market these securities, and the

16      statements in those offering circulars, to

17      which I think can be concluded the plaintiff

18      ascribed, negates the averments of any

19      reasonable reliance or justifiable reliance by

20      the plaintiff upon those statements that the

21      plaintiff claims were uttered falsely, in the

22      case of fraud, common-law fraud, uttered with

23      intent to deceive.

24          Furthermore, it's fair to say that the

25      allegations of constructive fraud and negligent

1          misrepresentation, as well as violations of the

2          Securities Act, all require a statement of some

3          statement of fact, past or existing, which is

4          false and which was uttered under circumstances

5          that would create liability.  And insofar as

6          constructive fraud and negligent

7          misrepresentation is concerned, scienter is not

8          a requirement, but our law very wisely says

9          there must be a substitute for scienter, and

10         that substitute must be the existence of some

11         duty which would place upon defendants in

12         negligent-misrepresentation or

13         constructive-fraud cases a duty to speak

14         carefully, in the case of negligent

15         misrepresentation, or truthfully, in the case

16         of constructive fraud.  And I find the

17         complaint devoid of the necessary allegations

18         to make a case for fraud.

19              And so for those reasons, I feel

20         constrained to also sustain the motions to

21         dismiss based upon a failure to state a cause

22         of action or state a claim for which relief can

23         be granted that have been filed by each and all

24         of the defendants in this case.

25              I leave it to counsel about whether they

```
1        want to try to file a joint order that would

2        dispose of all these matters or file separate

3        orders, but I trust that you all can deal with

4        that.

5            I guess I did not say a minute ago with

6        specificity what I thought about the claim for

7        unjust enrichment.  And I say again in that

8        regard that, in my very humble and honest

9        opinion, this is not a case of unjust

10       enrichment, unless the unjust enrichment is

11       going to be based upon a finding that someone

12       was guilty of fraud or constructive fraud or

13       negligent misrepresentation, and it's

14       questionable, in my judgment, whether unjust

15       enrichment can be applied in a negligent

16       misrepresentation case.  But I simply don't

17       think that this is a case for the application

18       of the rule or law of unjust enrichment.  As I

19       said before, I believe that unjust enrichment,

20       under our law, is designed to provide a remedy

21       when for some reason a contract does not exist

22       between parties or is otherwise unenforceable

23       and the circumstances are such that warrant the

24       Court to imply a contract to pay the reasonable

25       value for goods and services that have been
```

1       supplied by the plaintiff to the defendant.  I

2       just don't think that fits here.  Our law has

3       some meaning, folks.  This is a learned

4       profession.  We think about things, and we

5       carve out rules to deal with them, and we just

6       can't say anything goes.  And so I struggled

7       with that a lot.

8           I think I have dealt with all the motions

9       that are presently pending before this Court

10      except the motions to sever based on misjoinder

11      arguments, and it is my opinion, based upon

12      what I've already done here today, that those

13      motions should await another day, and so they

14      are most respectfully pretermitted.

15          All right.  Do you have a question?  Go

16      ahead, Counsel.

17          MR. GIMBEL:  I just have one brief

18      clarification, Your Honor, just because, as you

19      noted, this could go up to the Court of

20      Appeals.  I believe when you were granting the

21      defendants' motions on personal jurisdiction,

22      you referred to the issuers' and the ratings

23      agencies' motions, and I just wanted --

24          THE COURT:  I referred to what?

25          MR. GIMBEL:  The motions by the issuers and

Page 21

1          the ratings agencies to dismiss on personal

2          jurisdiction grounds.  I wanted just to confirm

3          on the record that it applies to the

4          collateral --

5              THE COURT:  The collateral manager too.

6          Thank you.  I meant to mention that, and I

7          simply overlooked it.

8              MR. GIMBEL:  Thank you, Your Honor.

9              THE COURT:  This is correct.  It will apply

10         to the collateral manager.

11             I did not address a minute ago the

12         preemption issue either.  I think our law on

13         that issue is pretty much in its infancy, but I

14         cannot read that act in any way to conclude

15         that, insofar as a claim is based upon

16         negligence against a rating agency, that that

17         act is designed by Congress to preempt such

18         litigation.  And I sustain the rating agencies'

19         motion on that additional ground.

20             Also, I didn't address some arguments that

21         have been made in the briefs, not referred to

22         here today, about proximate cause or loss

23         causation.  And I think that's a real good

24         question in this case, but I do not believe

25         that that's a matter that can be dealt with as

Page 22

1          a pleading problem today on the state of this

2          record, so I'm purposely not granting a motion

3          to dismiss based upon the failure to allege

4          proximate causation or what's commonly referred

5          to, I think, in securities litigation as loss

6          causation, but it raises a very good and

7          important question.

8               All right.  Have I messed things up so much

9          that they can't be un-messed now?  Anybody?

10               All right.  Thank you all very much.  I

11          hope you have a great holiday.

12               And you may adjourn court for us until nine

13          o'clock Monday morning.

14               THE BAILIFF:  Tuesday morning --

15               THE COURT:  Tuesday morning.

16               THE BAILIFF:  -- nine o'clock.  Court is

17          adjourned.

18          (End of transcript.)

19

20

21

22

23

24

25

1             C E R T I F I C A T E

2

3    STATE OF TENNESSEE

4    COUNTY OF ANDERSON

5             I, Jana Neighbors, RPR, CCR, LCR, and Notary

6    Public, do hereby certify that I reported in machine

7    shorthand the above proceedings, that the foregoing

8    pages were transcribed by me and constitute a true and

9    accurate record of the proceedings.

10            I further certify that I am not an attorney or

11   counsel of any of the parties, nor an employee or

12   relative of any attorney or counsel connected with the

13   action, nor financially interested in the action.

14            Signed and dated this 29th day of May, 2012.

15

16                    _____

                      Jana Neighbors, RPR, CCR, LCR
17                    Tennessee LCR #013
                      Expiration Date:  June 30, 2012
18                    Notary Public
                      My Commission Expires:
19                    May 21, 2013

20

21

22

23

24

25