IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TOWN NORTH BANK, N.A., | § § | |
| Plaintiff, | § § | |
| v. | § § | |
| SHAY FINANCIAL SERVICES INC., UBS FINANCIAL SERVICES, INC., MORGAN STANLEY & CO. LLC, MERRILL LYNCH & CO. INC., J.P. MORGAN SECURITIES LLC, successor in interest to BEAR STEARNS & CO., INC., | § § § § § § § § | CIVIL ACTION NO. 3:11-CV-3125-L |
| Defendants. | § § | |

SHAY FINANCIAL SERVICES, INC.'S
REPLY IN SUPPORT OF MOTION TO DISMISS

sf-3179544

## TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................................ 1
II. TOWN NORTH ARGUES NO MISSTATEMENTS OR OMISSIONS BY SHAY ............................................................................................................................ 1
III. TOWN NORTH ARGUES NO BASIS FOR A "STRONG INFERENCE" OF SCIENTER ................................................................................................................... 3
IV. ANY RELIANCE BY TOWN NORTH WAS UNREASONABLE .......................... 5
V. TOWN NORTH FAILS TO SHOW SHAY'S ALLEGED MISSTATEMENT OR OMISSION CAUSED ITS LOSSES ........................................................................... 7
VI. TOWN NORTH ARGUES NO BASIS FOR ANY FIDUCIARY DUTY BY SHAY .......................................................................................................................... 10
VII. TOWN NORTH'S CLAIMS ARE TIME-BARRED .............................................. 12
VIII. CONCLUSION ........................................................................................................... 14

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*ABC Arbitrage Plaintiffs Grp. v. Tchuruk,*
    291 F.3d 336 (5th Cir. 2002) ..................................................................................................2

*Advocare Int'l LP v. Horizon Labs, Inc.,*
    524 F.3d 679 (5th Cir. 2008) ................................................................................................13

*Coates v. Heartland Wireless Commc'ns, Inc.,*
    26 F. Supp. 2d 910 (N.D. Tex. 1998) .....................................................................................8

*Dandong v. Pinnacle Performance Ltd.,*
    No. 10 Civ. 8086 (LBS), 2011 WL 5170293 (S.D.N.Y. Oct. 31, 2011) ................................5

*Dodona I, LLC v. Goldman, Sachs & Co.,*
    No. 10 Civ. 7497 (VM), 2012 WL 935815 (S.D.N.Y. Mar. 21, 2012) ........................5, 9, 10

*Dorsey v. Portfolio Equities, Inc.,*
    540 F.3d 333 (5th Cir. 2008) ..................................................................................................3

*Four Bros. Boat Works, Inc. v. Tesoro Petroleum Cos., Inc.,*
    217 S.W.3d 653 (Tex. App. 2006) ........................................................................................11

*Hannaway v. Deutsche Bank Nat'l Trust Co.,*
    No. 10-cv-714-LY, 2011 U.S. Dist. LEXIS 24775 (W.D. Tex Mar. 11, 2011) ..............12, 13

*In re HomeBanc Corp. Sec. Litig.,*
    706 F. Supp. 2d 1336 (N.D. Ga. 2010) ..................................................................................9

*Ind. Elec. Worker's Pension v. Shaw Grp.,*
    537 F.3d 527 (5th Cir. 2008) ................................................................................................11

*Ins. Co. of N. Am. v. Morris,*
    981 S.W.2d 667 (Tex. 1998) ................................................................................................11

*Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.,*
    962 S.W.2d 507 (Tex. 1998), *superseded on other grounds by statute, see Durham v.*
    *Beettner*, 201 S.W.3d 859 (Tex. App. Waco 2006) ..............................................................4

*Lee v. Hasson,*
    286 S.W.3d 1 (Tex. App. 2007) ...........................................................................................11

*Lentell v. Merrill Lynch & Co.,*
    396 F.3d 161 (2d Cir. 2005) ...................................................................................................9

*Litson-Gruenber v. JPMorgan Chase & Co.*,
　No. 7:09-CV-056-O, 2009 U.S. Dist. LEXIS 117749 (N.D. Tex. Dec. 16, 2009) ................... 3

*Lormand v. US Unwired, Inc.*,
　565 F.3d 228 (5th Cir. 2009) ................................................................................... 7, 8

*Magruder v. Halliburton Co.*,
　No. 3:05-CV-1156-M, 2009 U.S. Dist. LEXIS 27561 (N.D. Tex. Mar. 31, 2009) ............. 3, 8

*Merck & Co., Inc. v. Reynolds*,
　559 U.S. ___, 130 S. Ct. 1784 (2010) ......................................................................... 13

*Nathenson v. Zonagen Inc.*,
　267 F.3d 400 (5th Cir. 2001) ................................................................................ 3, 4, 5

*Porter v. Shearson Lehman Bros., Inc.*,
　802 F. Supp. 41 (S.D. Tex. 1992) ................................................................................ 6, 7

*Reed v. Prudential Secs. Inc.*,
　875 F. Supp. 1285 (N.D. Tex. 1995), *aff'd*, 87 F.3d 1311 (5th Cir. 1996) ..................... 13

*Republic Bank & Trust Co. v. Bear Stearns & Co., Inc.*,
　683 F.3d 239 (6th Cir. 2012) ......................................................................................... 7

*Rosenzweig v. Azurix Corp.*,
　332 F.3d 854 (5th Cir. 2003) ......................................................................................... 4

*Sanchez v. Liggett & Myers, Inc.*,
　187 F.3d 486 (5th Cir. 1999) ......................................................................................... 7

*Si Kyu Kim v. Harstan, Ltd.*,
　286 S.W.3d 629 (Tex. App. El Paso 2009), *petition for review denied* No. 09-0573,
　2010 Tex. LEXIS 66 (Tex Jan. 15, 2010) ...................................................................... 7

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
　551 U.S. 308 (2007) ....................................................................................................... 5

*Western Reserve Life Assurance Co. of Ohio v. Graben*,
　233 S.W.3d 360, 373-74 (Tex. App. 2007) ................................................................ 11

**STATUTES**

28 U.S.C. § 1658(b) ............................................................................................................ 12

Tex. Civ. Prac. & Rem. Code Ann. § 16.004 (2012) ................................................. 12, 13

Tex. Rev. Civ. Stat. Ann., art. 581-33(H)(2) ...................................................................12

**OTHER AUTHORITIES**

Fed. R. Civ. Proc. 9(b) .................................................................................................1, 3, 5

I.  **INTRODUCTION**

Each of Town North's claims against Shay Financial fail for multiple reasons as explained below.

II. **TOWN NORTH ARGUES NO MISSTATEMENTS OR OMISSIONS BY SHAY**

In its Motion to Dismiss, Shay showed that Town North failed to allege with any particularity any misrepresentation or omission by Shay. Therefore, since all of Town North's claims are subject to the heightened pleading standards of Rule 9(b), all of its claims fail. (Shay Financial Services, Inc.'s Motion to Dismiss, Memorandum of Law in Support Thereof ("Shay's Motion to Dismiss") at 4-11, ECF No. 60.)

In its Response, Town North tacitly concedes that Shay did not make any misrepresentation to Town North, and argues only that "Shay failed to disclose material information known to Shay that, among other things, would have informed Plaintiff that the offering documents were no longer accurate, complete, reliable or valid at the time of Shay's sales to Plaintiff." (Town North Bank's Resp. to Shay Fin. Servs., Inc.'s Mot. to Dismiss ("Response to Shay") at 6, ECF No. 73.) Town North fails to identify any "material information" known to Shay that was not disclosed to Town North. Essentially, Town North asks the Court to assume that Shay knew that the financial crisis was approaching but failed to let Town North in on that secret.

As it does throughout its Response to Shay, Town North simply refers the Court to Town North's Response to the Bank Defendants' Motion to Dismiss. But Town North's arguments in that brief do not apply to Shay; those arguments all refer to information allegedly available or known *to the Bank Defendants*, who allegedly underwrote the securities that declined in value during the financial crisis. (*See, e.g.*, Town North Bank's Resp. to Bank Defs.' Mot. to Dismiss

Am. Compl. ("Response to Bank Defendants") at 10-11, ECF No. 71.) Town North argues that Bank Defendants knew "that the process of structuring and selling most securitizations in 2007 revolved around selecting and placing residential mortgage securities into Moody's and S&P credit rating models to generate artificial 'investment grade' ratings." (Response to Bank Defendants at 6; *see also id.* at 14-21 (describing alleged scheme by Bank Defendants to structure RMBS and CDOs to manipulate credit ratings).) There is no allegation in Town North's Amended Complaint that Shay knew the information allegedly known to the Bank Defendants, much less that it knew or failed to disclose it. Shay did not structure the securities at issue, and Town North does not allege that it did.

In Shay's Motion to Dismiss, it showed that the alleged "omissions" were actually an alleged failure to highlight publicly-available information. (Shay's Motion to Dismiss at 13-14.) Town North now argues that much of the information was not "publicly available," but known only to Bank Defendants. (Response to Shay at 7-8.) Town North does not argue that *Shay* had access to the allegedly insider information. (*See, e.g.,* Response to Shay at 7 ("Plaintiff identifies studies that were performed *for Bank Defendants* prior to Plaintiff's purchases in 2007.") (emphasis added).)

The only "fact" alleged as to Shay is that, in its role as "Distributor" of certain mutual funds (which Town North did not purchase), Shay allegedly had unspecified material nonpublic information about the securities it sold to Plaintiff in 2007. (*See* Response to Shay at 8.) Town North does not explain which securities Shay allegedly had information about, what information it had, or when Shay obtained the information. *See ABC Arbitrage Plaintiffs Grp. v. Tchuruk,*

291 F.3d 336, 349 (5th Cir. 2002) (requiring the "who, what, when, and where" of an alleged omission); *see also infra* Section III.[1]

Town North fails to allege any actionable false statement or omission by Shay, and each of its claims therefore fail as a matter of law. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 228-39 (5th Cir. 2008) ("Both federal securities claims and state-law fraud claims are subject to the [heightened pleading requirements] of Rule 9(b)."); *Litson-Gruenber v. JPMorgan Chase & Co.*, No. 7:09-CV-056-0, 2009 U.S. Dist. LEXIS 117749, at *10 (N.D. Tex. Dec. 16, 2009) (fiduciary duty claims premised on allegations of fraud are subject to the heightened pleading standard of Rule 9(b)).

### III. TOWN NORTH ARGUES NO BASIS FOR A "STRONG INFERENCE" OF SCIENTER

Even if Town North had sufficiently alleged a misrepresentation or omission, it would still have to plead facts with particularity raising a "strong inference" that Town North acted with scienter—that is an intent to deceive. *Nathenson v. Zonagen Inc.*, 267 F.3d 400, 407 (5th Cir. 2001) (citing 15 U.S.C. § 78u-4(b)(2)) (PSLRA requires facts as pled to establish a "strong inference" of scienter). Scienter is an essential element for Town North's federal securities fraud, state common law fraud, and state securities fraud aiding and abetting claims. *Id.*; *Dorsey*, 540 F.3d at 341, 344 (Texas common law fraud claims and state securities fraud aiding and abetting claims require sufficient allegations of scienter). In its Response, Town North argues only that Shay's affiliate, Shay Assets Management, sold unspecified securities to other customers out of

---

[1] To the extent that Town North asserts claims based on securities "purchased in earlier years and held in reliance on Shay's advice" (Response to Bank Defendants at 5 n.7), those purchases cannot support a claim. *See, e.g., Magruder v. Halliburton Co.*, No. 3:05-CV-1156-M, 2009 U.S. Dist. LEXIS 27561, at *7 (N.D. Tex. Mar. 31, 2009) ("The basic elements of a securities fraud claim are: . . .(3) *a connection with the purchase or sale of a security*[.]").

"portfolios containing agency and non-agency private-label RMBS and ABS" at some point in 2007. (Am. Compl. ¶ 85, ECF No. 50; Response to Bank Defendants at 26.)

Merely alleging that an affiliate of Shay sold securities around the same time that Town North purchased securities fails to give rise to any inference that Shay made any alleged misstatements or omissions to Town North with the intent to deceive, manipulate or defraud, or with severe recklessness as to that possibility. *See, e.g., Nathenson*, 267 F.3d at 408 (defining scienter for federal securities fraud claim); *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 526–27 (Tex. 1998) (defining scienter similarly for common law fraud claim), *superseded on other grounds by statute, see Durham v. Beettner*, 201 S.W.3d 859, 874 (Tex. App. Waco 2006). Town North fails to explain (1) which securities Shay allegedly had information about, (2) what information it had, (3) when Shay obtained the information, (4) whether those sales by the affiliate even occurred at or before Town North's purchases, or (5) whether the securities sold by Shay's affiliate in 2007 were the same securities purchased by Town North. Town North asks that the Court speculate that Shay might have known unspecified information about the securities Town North purchased because a different entity (Shay Assets Management) sold different securities to different customers. Town North must plead facts with particularity rather than rely on unsupported possibilities. *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 867 (5th Cir. 2003) ("bare allegations of motive and opportunity will not suffice to demonstrate scienter").

Again, rather than explain its claims against Shay, Town North instead relies on its Response to Bank Defendants. Both cases relied on by Town North are distinguishable, however. In both *Dodona I, LLC v. Goldman, Sachs & Co.*, No. 10 Civ. 7497 (VM), 2012 WL 935815, at *19 (S.D.N.Y. Mar. 21, 2012) and *Dandong v. Pinnacle Performance Ltd.*, No. 10 Civ. 8086

(LBS), 2011 WL 5170293, at *11-12 (S.D.N.Y. Oct. 31, 2011), the defendants were alleged to have structured the securities in question and taken positions to benefit from the failure of those securities in order to reduce their own exposure should the market fail. No such arguments are made regarding Shay – Town North has not alleged that Shay structured the securities, took a position to benefit from the failure of any securities, or had significant exposure in RMBS that it would need to limit. Nor is it alleged that Shay had access to the same insider information that Bank Defendants allegedly had access to. (Am. Complaint ¶¶ 57, 61, 64, 65.) As a result, Town North has failed to meet the heightened pleading standard under Rule 9(b) necessary to establish a "strong inference" of scienter with regard to Shay. *Nathenson*, 267 F.3d at 407; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007).

Town North's contention that Shay Assets Management allegedly sold some securities before or during the financial crisis does not raise any inference that Shay knew the crisis was approaching or would worsen. It is obviously unreasonable to infer that anyone ever "knows" the future fate of the markets. Town North's federal securities fraud claim, state common law fraud claim, and state securities fraud aiding and abetting claim should therefore be dismissed.

**IV. ANY RELIANCE BY TOWN NORTH WAS UNREASONABLE**

As Shay showed in its Motion to Dismiss, even had Town North otherwise established a claim under the federal securities and state fraud laws, dismissal would still be required for failure to allege reliance. (*See* Shay's Motion to Dismiss at 16-17.) In response, Town North repeats a vague insinuation that its reliance was reasonable because Shay Assets Management was the "Distributor" of certain Funds. Town North does not explain how reliance on oral

statements by a Shay representative was made reasonable because an affiliate entity distributed mutual funds that Town North did not purchase.[2]

Town North misunderstands Shay's reliance argument. In Shay's Motion to Dismiss, Shay pointed out that offering documents provided to Town North fully disclosed all of the risks inherent in the securities, including the risks that allegedly materialized. Therefore, any reliance on alleged oral misstatements or omissions was unreasonable as a matter of law. *See, e.g., Porter v. Shearson Lehman Bros., Inc.*, 802 F. Supp. 41, 57-58 (S.D. Tex. 1992), *adopted by* No. H-90-3251, 1992 U.S. Dist. LEXIS 19820 (S.D. Tex. Aug. 4, 1992). In response, Town North argues that it is not claiming reliance on the offering documents. The point, however, is that alleged reliance on oral misrepresentations or omissions is unreasonable as a matter of law if they contradict a written statement provided to the plaintiff. For example, in *Porter*, the court held that reliance on an oral sales pitch without reading written documents was unreasonable, even for unsophisticated investors. *Id.* And Town North was clearly not an unsophisticated investor. In a case about the decline of residential-mortgage-backed securities during the financial crisis, a bank alleged that Bear Stearns & Co. failed to disclose the risks of those securities. The Sixth Circuit noted "[w]ere [plaintiff] a country bumpkin, not a financial institution, this argument might be colorable. However, a large institutional investor, in its exercise of 'common sense,' . . . should [read the offering documents and understand the risks disclosed therein]." *Republic Bank & Trust Co. v. Bear Stearns & Co., Inc.*, 683 F.3d 239, 258 (6th Cir. 2012). Similarly, here, Town North could not have reasonably relied on alleged statements or omissions to the contrary of thorough risk disclosures in the offering documents.

---

[2] Town North's reference to a separate lawsuit filed by Asset Management Fund is likewise irrelevant to its claims against Shay. (Response to Shay at 9-10.) The suit deals with separate securities from this one, and the allegations in that complaint have no bearing on Town North's allegations here.

*See* Appendix to Shay Financial Services, Inc.'s Motion to Dismiss the Amended Complaint, Exhs. B, D-Z, ECF No. 61; *see also Porter*, 802 F. Supp. at 57-58. Therefore, Town North's federal securities and state fraud claims fail as a matter of law. (*See* Shay's Motion to Dismiss at 16-17.)

## V.   TOWN NORTH FAILS TO SHOW SHAY'S ALLEGED MISSTATEMENT OR OMISSION CAUSED ITS LOSSES

Shay established in its Motion to Dismiss that Town North has failed to articulate any causal link between any alleged misstatement or omission and Town North's alleged losses. Causation is an essential element for Town North's federal securities fraud, common law fraud and breach of fiduciary duty claims. *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 262 (5th Cir. 2009) (federal securities fraud); *Sanchez v. Liggett & Myers, Inc.*, 187 F.3d 486, 491 (5th Cir. 1999) (plaintiff must adequately plead causation to prevail on a claim for common law fraud); *Si Kyu Kim v. Harstan, Ltd.*, 286 S.W.3d 629, 635 (Tex. App. El Paso 2009) (breach of fiduciary duty claim "requires a showing that the breach caused damages"), *petition for review denied* No. 09-0573, 2010 Tex. LEXIS 66 (Tex. Jan. 15, 2010).

In its response, Town North still fails to explain how any alleged misstatement or omission *by Shay* caused its alleged losses. (*See* Response to Bank Defendants at 29-31.) Instead, Town North argues that it relied on alleged but unspecified misstatements and/or omissions in its purchase of the securities and would not have purchased the securities at issue in the absence of the alleged misstatements and/or omissions. (*See id.* at 31 ("Plaintiff has alleged that at the time it purchased the securities, if Plaintiff had known of the material facts not disclosed to it, Plaintiff would not have made the purchases and thus would not have suffered the loss.").) This, however, improperly conflates the element of "transaction causation" with the

separate element of loss causation. *Coates v. Heartland Wireless Commc'ns, Inc.*, 26 F. Supp. 2d 910, 922 (N.D. Tex. 1998). The *Coates* court explained the distinction:

> To prevail on their Rule 10b-5 claim, plaintiffs must prove both actual causation (transaction causation) and proximate causation (loss causation). To plead transaction causation, a plaintiff can allege that the defendant's misrepresentations or omissions induced him to make the investment. To plead loss causation, a plaintiff can allege that he would not have invested had he known the truth, *and that the untruth was in some reasonably direct way responsible for the loss*.

*Id.* (emphasis added and citations omitted). Town North concedes that it is required to allege facts sufficient to establish "that the loss [was] caused by the materialization of the concealed risk," (Response to Bank Defendants at 30 (quoting *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 173 (2d Cir. 2005))), but completely fails to allege any facts which, taken as true, would show that its loss is in fact attributable to the materialization of the alleged misstatements and/or omissions. *Lormand*, 565 F.3d at 262 (plaintiff must plead facts sufficient to establish "what the causal connection might be between that loss and the [alleged] misrepresentation") (citing *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 (2005) (brackets in original)); *Magruder*, 2009 U.S. Dist. LEXIS 27561, at *36-37 (the plaintiff has the burden of proving "the causal connection between the material misrepresentation or omission and the economic loss").

Despite Town North's claim to the contrary, Shay does not suggest that the complaint must rule out all other possible explanations for alleged loss. But Town North *is* required to allege facts sufficient to establish some causal connection between the materialization of the alleged misstatements/omissions and the loss, which it has failed to do. In the absence of any such causal connection, the Court may take judicial notice of the undisputed and unprecedented collapse of the U.S. housing market, which led to universal and precipitous declines in RMBS of the type at issue here. *See In re HomeBanc Corp. Sec. Litig.*, 706 F. Supp. 2d 1336, 1341 n.1 (N.D. Ga. 2010) (taking judicial notice of financial crisis and dismissing complaint for failure to

8

plead loss causation). "[W]hen the plaintiff's loss coincides with a marketwide phenomenon causing comparable losses to other investors, the prospect that the plaintiff's loss was caused by the fraud decreases, and a plaintiff's claim fails when it has not adequately pled facts which if proven would show that its loss was caused by the alleged misstatements as opposed to intervening events." *Lentell*, 396 F.3d at 174.

Town North relies heavily on *Dodona*, 2012 WL 935815, at *19, for its position that the collapse of the housing market was not an intervening event precluding liability. (Response to Bank Defendants at 29-30.) The facts of *Dodona*, however, are clearly distinguishable from the facts alleged in this case involving Shay. Dodana alleged that Goldman not only sold it the securities in question, but also created and marketed those same securities and took a position to benefit from the failure of those securities specifically with the intent of reducing its overall exposure to "subprime mortgage backed securities" from $7.2 billion to $2.4 billion while at the same time encouraging investors to invest. *Id.* at *1-6. The court noted that the "origin of the investments at issue" was "a vital issue" in its determination of the motion to dismiss. *Id.* at *11. In its rejection of the defendant's loss causation argument, the *Dodana* court specifically relied on the allegations that Goldman was "an active participant in the collapse of [the Hudson CDOs] and the financial markets in general, rather than a passive victim." *Id.* at *19 (brackets in original).

In contrast, Town North makes no such "active participation" allegations against Shay. There is no allegation that Shay created the securities at issue, took a position to benefit itself from the failure of the securities, or acted as part of a scheme to reduce its exposure to these types of securities. As a result, the *Dodona* holding does not apply in this case and Town

9

sf-3179544

North's federal securities and Texas common law fraud and breach of fiduciary duty claims should be dismissed for failure to adequately plead causation.

### VI. TOWN NORTH ARGUES NO BASIS FOR ANY FIDUCIARY DUTY BY SHAY

Shay demonstrated in its Motion to Dismiss that Town North failed to allege any basis for a duty by Shay, invalidating any claim of omission or for breach of fiduciary duty. (Shay's Motion to Dismiss at 11-12, 20-21.) In its Response, Town North briefly argues two bases for an alleged duty to disclose.

First, Town North throws off an allegation that Shay owed a duty to Town North as an "insider" because Shay Assets Management is the "Distributor" of certain mutual funds. (Response to Shay at 5.) The fact that a different entity distributes different securities to other customers does not establish that Shay Financial's representatives possessed "inside" information about the future of the market. Rather than argue the point, Town North points to its Response to Bank Defendants' Motion to Dismiss. But those arguments rely on the Bank Defendants' specialized knowledge due to their institutional trading desks. (*See* Response to Bank Defendant at 6-10.) Those arguments do not apply to Shay, a small broker-dealer, and therefore Town North cannot imply a duty on those grounds.

Town North appears to concede that Shay owed no formal fiduciary duty to Town North, but argues that Shay had an "informal" fiduciary duty based on nothing more than a long-standing business relationship. (*See* Response to Shay at 11-13.) The cases cited do not allow creation of a fiduciary duty on such slender grounds, however. Rather, "[m]ere subjective trust does not transform an arm's-length transaction into a fiduciary relationship." *Lee v. Hasson*, 286 S.W.3d 1, 14 (Tex. App. 2007). Indeed, Texas courts hesitate to create a fiduciary duty based on a business relationship. *Four Bros. Boat Works, Inc. v. Tesoro Petroleum Cos., Inc.*, 217 S.W.3d

10

653, 669-70 (Tex. App. 2006) ("The fact that a business relationship has been cordial and of extended duration is not by itself evidence of a confidential relationship."); *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 674-75 (Tex. 1998) (finding no "informal" fiduciary duty in business relationship between a surety and a principal). In *Western Reserve Life Assurance Co. of Ohio v. Graben*, a case cited by Town North, the court emphasized the need to exercise caution in implying a fiduciary relationship, finding one only where an unsophisticated investor relied on a spiritual-advisor-turned-broker who was also acting as financial advisor. 233 S.W.3d 360, 373-74 (Tex. App. 2007). Town North makes no such allegations against Shay.

Nor is dismissal at the pleading stage inappropriate. "Although the existence of a confidential relationship can be a question of fact, where there is no evidence to establish the relationship, it is a question of law." *Four Bros. Boat Works*, 217 S.W.3d at 670. Here Town North argues no facts to support a fiduciary relationship. In the absence of a duty, Town North's claims of omissions must be dismissed, as well as its fiduciary duty claim. *See Ind. Elec. Worker's Pension v. Shaw Grp.*, 537 F.3d 527, 541 (5th Cir. 2008).

## VII. TOWN NORTH'S CLAIMS ARE TIME-BARRED

As Shay showed in its Motion to Dismiss, all four of Town North's claims are barred by the applicable statutes of limitations. Town North's response regarding its failure to bring its claims against Shay within the statutes of limitations is utterly deficient. Town North's response completely fails even to mention Shay, much less explain what facts regarding the claims *against Shay* it could not have discovered using reasonable diligence for more than two years after Town North's last purchase of the securities at issue on November 5, 2007. Town North further fails to

even address the fact that its Texas common law fraud and breach of fiduciary duty claims based on the 2007 transactions are also outside the four-year statutes of limitations for such claims.[3]

Rather than address these issues, Town North attempts to excuse its more than four-year delay in bringing this suit by claiming that it had to wait to learn of the facts developed by the "public investigations by the SEC and other enforcement bodies in 2010, the FRB Study in 2011, [and] the FCIC in 2012." (Response to Bank Defendants at 35.) These studies, however, relate to the alleged misdeeds by the Bank Defendants and do not disclose any new facts regarding the sales involving Shay.

In truth, the facts alleged by Town North against Shay were readily available no later than November 5, 2007 had Town North exercised reasonable diligence to investigate its claims.[4] The same issues regarding the level of risk involved with RMBS and CDOs that is the heart of Town North's allegations were the subject of lawsuits and other public materials prior to November 2007. (See Mem. of Law in Support of Bank Defendants' Mot. to Dismiss Pl.'s Am. Compl. at 32 n.37, 35 n.38, ECF No. 64.) Moreover, Town North's own allegations establish that it was or should have been on notice of the alleged omissions by Shay regarding these types

---

[3] Town North does not dispute that its claims involving the 2006 transactions are outside the statutes of repose for its federal and Texas securities fraud claims and outside the statutes of limitations for all four of its claims. 28 U.S.C. § 1658(b) (statutes of repose and limitations for the federal securities fraud claim are five years and two years, respectively); Tex. Rev. Civ. Stat. Ann., art. 581-33(H)(2) (statutes of repose and limitations for the Texas securities fraud claim are five and three years, respectively); *Hannaway v. Deutsche Bank Nat'l Trust Co.*, No. 10-cv-714-LY, 2011 U.S. Dist. LEXIS 24775, at *17-20 (W.D. Tex Mar. 11, 2011), *adopted by* slip op. (W.D. Tex. Apr. 6, 2011) (statute of limitations for Texas common law fraud is four years); Tex. Civ. Prac. & Rem. Code Ann. § 16.004 (2012) (statute of limitations for breach of fiduciary duty in Texas is four years).

[4] The "reasonable diligence" standard articulated in *Merck & Co., Inc. v. Reynolds*, 559 U.S. ___, 130 S. Ct. 1784 (2010), applies only to Town North's securities fraud claims. The standard for accrual of Town North's common law fraud claim is when it learned of, or should have discovered, the facts allegedly giving rise to its cause of action, *Hannaway*, 2011 U.S. Dist LEXIS 24775, at *17-20, and Town North's breach of fiduciary duty claim accrued on the date on which the alleged breach was perpetrated, or from the date when the plaintiff discovered, or should have discovered, the facts allegedly giving rise to the claim. Tex. Civ. Prac. & Rem. Code Ann. § 16.004 (2012); *Reed v. Prudential Secs. Inc.*, 875 F. Supp. 1285, 1290 (N.D. Tex. 1995) (superseded by statute changing limitations period to four years), *aff'd*, 87 F.3d 1311 (5th Cir. 1996); see *Advocare Int'l LP v. Horizon Labs, Inc.*, 524 F.3d 679, 694 (5th Cir. 2008).

of securities no later than October 26, 2007, when the RAST 2006-A16 security purchased by Town North from Shay was publically downgraded to BBB+. (Am. Compl. ¶ 82; *see also* Appendix to Shay Services, Inc.'s Mot. to Dismiss the Am. Compl., Ex. C, ECF No. 61-1 (downgrade of RAST 2006-A16).)

Despite this public information, Town North failed to file this lawsuit until more than four years after its last purchase from Shay on November 5, 2007. (Am. Compl. ¶ 92.) Town North has failed to allege any facts regarding its allegations against Shay that were not known to it or would not have been known with reasonable diligence, therefore all of its claims are barred by the statutes of limitations.

## VIII. CONCLUSION

Accordingly, Town North Bank's Complaint should be dismissed.

Respectfully submitted,

/s/ *S. Cass Weiland*
S. Cass Weiland
State Bar No. 21081300
**PATTON BOGGS LLP**
2000 McKinney Ave., Suite 1700
Dallas Texas 75201
214-758-1500
214-758-1550 (Telecopier)

**ATTORNEYS FOR DEFENDANT
SHAY FINANCIAL SERVICES, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on August 6, 2012, a true and correct copy of the foregoing was filed via the Court's CM/ECF system which will send notification of such filings(s) to all counsel of record consenting to electronic service.

/s/ *S. Cass Weiland*
S. Cass Weiland